# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:19-cv-00250-MR-WCM

| | |
|---|---|
| MARCUS HYATT,            ) | |
|                       ) | |
|          **Plaintiff,**     ) | |
|                       ) | |
|     **vs.**                     ) | <u>**MEMORANDUM OF**</u> |
|                       ) | <u>**DECISION AND ORDER**</u> |
| JEFF MAY,              ) | |
|                       ) | |
|          **Defendant.**    ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Plaintiff Hyatt's Application to Award Attorneys' Fees [Doc. 144].

## I.    BACKGROUND

On January 20, 2018, officers from the Buncombe County Sheriff's Office ("BCSO"), acting on a tip, conducted a traffic stop of a car driven by Brandon Pickens in which the Plaintiff Marcus Hyatt was a passenger. Plaintiff Hyatt was detained for the next several hours while officers searched the car and its occupants for illegal narcotics.  After completing the search of the car, the officers procured a search warrant and conducted a strip search of Plaintiff Hyatt in a nearby convenience store bathroom.  Ultimately, Plaintiff Hyatt was not found to be in possession of any controlled substances, and he was released without charges.

At the same time that Plaintiff Hyatt was being detained, his girlfriend, Plaintiff Ashley Barrett, was stopped by BCSO officers in a separate traffic stop on suspicion that she was attempting to dispose of controlled substances at the couple's apartment. Following a search of Plaintiff Barrett's vehicle and the couple's apartment, no controlled substances were found, and Plaintiff Barrett was also released without charges.

The Plaintiffs brought this action pursuant to 42 U.S.C. § 1983 and North Carolina state law, challenging the officers' actions during the respective traffic stops and searches. Specifically, Plaintiff Hyatt asserted claims for false imprisonment, false arrest, and assault and battery under state law and for unlawful search and seizure under 42 U.S.C. § 1983 against BCSO deputies J.D. Lambert, Jeff May, and Katherine Lewis. Plaintiff Hyatt also asserted a claim for unreasonable sexually invasive search in violation of the Fourth Amendment under § 1983 against Defendants Lambert and May. Plaintiff Barrett asserted claims for false imprisonment and false arrest under state law and for unlawful seizure in violation of the Fourth Amendment under § 1983 against Defendants Lambert and Lewis. The Plaintiffs also

asserted a claim for action under the bond against Defendant Miller and Defendant Western Surety Company.[1]

The Court held a jury trial in this matter from March 17, 2021 to March 25, 2021. The jury was able to return only a partial verdict and deadlocked as to a number of issues. The parties stipulated their acceptance of the jury's verdict as to the issues on which they could unanimously agree and for the Court to serve as the finder of fact as to any issues on which the jury reached an impasse. Following the trial, and in accordance with the parties' stipulation, the Court subsequently entered an Order memorializing the jury's findings and setting forth findings of fact and conclusions of law with respect to the issues on which the jury had deadlocked. [Doc. 142]. In that Order, the Court dismissed Plaintiff Barrett's claims in their entirety. With respect to Plaintiff Hyatt's claims, the Court entered Judgment in favor of Plaintiff Hyatt against Defendant May in the amount of $50,000 on Plaintiff Hyatt's § 1983 claims for unreasonable search and seizure and on Plaintiff Hyatt's

---

[1] Plaintiff Barrett also asserted state law claims for trespass to property and § 1983 claims for unlawful search, but these claims were dismissed on summary judgment. [Doc. 99]. The Plaintiffs' § 1983 claims against the Defendants in their official capacities were dismissed as well. [Id.].

3

state law claims for false imprisonment/false arrest, assault, and battery and dismissed the remainder of the Plaintiff's claims.  [Doc. 143].

Plaintiff Hyatt now moves the Court to award him $261,563.25 in attorneys' fees as a "prevailing party" pursuant to 42 U.S.C. § 1988.[2]  [Doc. 148].  Defendant May does not contest that Plaintiff Hyatt is the prevailing party in this matter and is entitled to an award of fees, but he asks the Court to use its discretion and significantly reduce the requested award.  [Doc. 146].

## II.  DISCUSSION

Title 42 of the United States Code, Section 1988 provides that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988(b).  A plaintiff constitutes a "prevailing party" if he "succeed[s] on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  It is undisputed that Plaintiff Hyatt is a "prevailing party" and thus entitled to an award of attorneys' fees under § 1988.

---

[2] The Plaintiff indicates in his motion that he intends to seek a separate award of costs pursuant to 28 U.S.C. § 1920.  [Doc. 144 at 4].

4

"The starting point for establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994). The burden is on the fee applicant to justify the reasonableness of the requested fee. See Blum v. Stenson, 465 U.S. 886, 897 (1984).

In exercising its discretion in the application of this lodestar method, the Court is guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (quoting Spell v. McDaniel, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987)). "Although the Court considers all of the factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable." Firehouse Restaurant Group, Inc. v. Scurmont LLC, No. 4:09-cv-00618-RBH, 2011 WL

4943889, at *12 (D.S.C. Oct. 17, 2011) (citing EEOC v. Service News Co., 898 F.2d 958, 965 (4th Cir. 1990)).

In opposing the Plaintiff's fee request, Defendant May addresses only one of these factors: the reasonableness of the time and labor expended by Plaintiff Hyatt's counsel. While the Defendant states that "many of the [other] lodestar factors weigh against the Plaintiff's fee request," [Doc. 146 at 2], he offers no argument regarding these other factors. Nevertheless, the Court endeavors to address each of these factors in turn.

### A.    Time and Labor Expended

The Court begins its lodestar analysis with considering the time and labor expended by the Plaintiff's attorneys. "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" Doe v. Kidd, 656 F. App'x 643, 656 (4th Cir. 2016) (quoting in part Hensley, 461 U.S. at 434).

Plaintiffs Hyatt and Barrett were represented by three attorneys in this action: Chad R. Donnahoo of Asheville, North Carolina; Brian D. Elston of Asheville, North Carolina; and John R. Sutton, Jr., of Candler, North Carolina. Mr. Donnahoo recorded 336.95 hours in work expended on the prosecution of this action. After reviewing the appropriate case law and his

billing statement, however, Mr. Donnahoo reduced his billing by 45.0 hours (to a total of 291.95 hours) to account for some activities for which he felt it was important to be present but for which his participation was not necessary (e.g., depositions for Defendants taken by Mr. Elston and/or Mr. Sutton). Mr. Donnahoo contends he should be compensated at $300.00 per hour; therefore, Mr. Donnahoo seeks $87,585.00 as a reasonable attorney fee in this action. [See Doc. 144 at 2; Doc. 144-3: Donnahoo Decl.].

Attorney Brian D. Elston recorded 178.75 hours in work expended on the prosecution of this action. After reviewing the appropriate case law and this billing statement, Mr. Elston reduced his billing by 21.25 hours (to a total of 157.50 hours) to account for some activities for which he felt it was important to be present but for which is participation was not necessary (e.g., depositions for Defendants taken by Mr. Donnahoo and/or Mr. Sutton). Mr. Elston contends he should be compensated at $300.00 per hour; therefore, Mr. Elston seeks $47,250.00 as a reasonable attorney fee in this action. [See Doc. 144 at 2-3; Doc. 144-4: Elston Decl.].

Attorney John Sutton recorded 430.1[3] hours in work expended on the prosecution of this action. After reviewing the appropriate case law and this billing statement, Mr. Sutton reduced his billing by 15.50 hours (to a total of 414.6 hours) to account for some activities for which he felt it was important to be present but for which his participation was not necessary (e.g., depositions for Defendants taken by Mr. Donnahoo and/or Mr. Elston). Mr. Sutton contends he should be compensated at $300.00 per hour; therefore, Mr. Sutton seeks $124,380.00 as a reasonable attorney fee in this action. [Doc. 144 at 3; Doc. 144-2: Sutton Decl.].

Additionally, the Plaintiff's attorneys utilized the services of Mr. Sutton's legal assistant/paralegal, Laurie Mathis, who recorded a total of 28.1 hours in work expended on the prosecution of this action. Attorney Sutton contends that Ms. Mathis should be compensated at a rate of $90.00 per hour; therefore, Attorney Sutton seeks a paralegal/legal assistant fee of $2,529.00[4] for the work performed by Ms. Mathis. [Doc. 144 at 3-4; Doc. 144-2: Sutton Decl. at 14-15].

---

[3] The Plaintiff's Motion states that Sutton recorded 445.60 hours in work [Doc. 144 at 3]; however, his billing records indicate that he recorded a total of 430.1 hours. [Doc. 144-2 at 13].

[4] In the Plaintiff's Motion, the Plaintiff seeks recovery of only $2,416.50 for Ms. Mathis' work; however, this appears to be a mathematical error, as multiplying Ms. Mathis' hours worked (28.1) by an hourly rate of $90.00 equals $2,529.00.

8

The Defendant objects to the Plaintiff's fee request on the grounds that many of the billing entries are vague; that the Plaintiff's attorney engaged in block billing; that some of the billing is duplicative; and that the fees sought related to unsuccessful claims (including claims of the unsuccessful Plaintiff) are unreasonable.[5]  [Doc. 146 at 3-7].

### 1. Vague Billing

The Defendant argues that Mr. Sutton's billing entries are "so lacking in detail that it is impossible for this Court to analyze what task was performed, let alone whether the time spent for that task was reasonable." [Doc. 146 at 3].

The Defendant cites a number of examples from Mr. Sutton's billing records that he contends lack sufficient detail.  For example, on July 31,

_____

[5] In support of his brief opposing Plaintiff Hyatt's fee request, Defendant May's counsel submits a spreadsheet that he prepared using Mr. Donnahoo, Mr. Elston and Mr. Sutton's submitted timesheets, and he refers to this spreadsheet in discussing certain time entries. [Doc. 146-2]. A review of this spreadsheet reveals, however, that it does not accurately reflect all of the time entries made by Plaintiff's attorneys.  As just one example, defense counsel's spreadsheet represents that on June 17, 2020, Mr. Donnahoo claims 1.25 hours with the following narrative description: "provide documents for review and general deposition discussion."  [Doc. 146-2 at 4].  In fact, however, the full narrative description for Mr. Donnahoo's June 17, 2020 billing entry reads as follows:  "*Initial meeting with Plaintiff Barrett re: upcoming deposition;* provide documents for review and general deposition discussion."  [Doc. 144-3: Donnahoo Decl. at 31-32 (emphasis added)].  As such, it does not appear that defense counsel's spreadsheet is an accurate summary of counsel's billing records.   As such, the Court will disregard defense counsel's spreadsheet and will instead reference only the actual timesheets prepared and presented by Plaintiff Hyatt's attorneys.

2018, Mr. Sutton billed 1.50 hours for "Prep for meeting/court-continued"; on September 24, 2019, he billed 3.00 hours for "Consult Bill Wilke," a person unknown to the defense; and on April 2, 2020, he billed 2.00 for "Review Draft Discovery, email from Donnahoo." [Doc. 144-2 at 9-10]. Additionally, Mr. Sutton reported expending 164.75 hours between 2/15/21 and 3/16/21 in trial preparation, with many of these entries being described as only "Trial prep." [See Doc. 144-2 at 12]. The Defendant also argues that it appears from Mr. Sutton's billing that he spent at least 23.75 hours in preparing for jury selection, which the Defendant argues is unreasonable. With respect to these latter entries, however, a careful review shows that Mr. Sutton was spending time preparing for jury selection along with completing other tasks related to trial preparation, such as preparing cross-examinations.[6] Nevertheless, the Court agrees that some of Mr. Sutton's billing entries are unduly vague and that this warrants a minor reduction of his requested fee. Accordingly, in the exercise of its discretion, the Court will reduce Mr. Sutton's time by a total of forty (40) hours.

---

[6] The Defendant argues that it is unreasonable for Mr. Sutton to have claimed time for preparing for the cross-examination of a witness when he did not in fact examine that witness at trial. Given that the division of labor at trial can often change at the last minute, the Court does not find the time spent by Mr. Sutton in preparing to examine this witness to be unreasonable.

## 2. Block Billing

Next, the Defendant argues that "the vast majority" of counsel's billing entries are block-billed, and that this practice warrants an across-the-board reduction of their requested fees. [Doc. 146 at 4-5].

The term "block billing" refers to the practice of grouping tasks together in time entries rather than making separating entries for each discrete task. See McAfee v. Boczar, 738 F.3d 81, 90 (4th Cir. 2013). Block billing inhibits the Court from "discern[ing] with precision how . . . hours were billed and precisely why those hours were needed." Dyer v. City of Gastonia, No. 3:15-cv-00033-MOC-DCK, 2016 WL 4443190, at *5 (W.D.N.C. Aug. 19, 2016). "Because of the obligation to maintain billing records with sufficient detail that the court may review and determine the reasonableness of individual activities, block billing entries are disfavored in attorney's fees award cases." Denton v. PennyMac Loan Servs., LLC, 252 F. Supp. 3d 504, 525 (E.D. Va. 2017). Where block billing prevents an accurate assessment of the reasonableness of the fee request, courts may decline to award fees for hours that are not sufficiently documented, or they may reduce the overall fee award by a fixed percentage or amount. Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012).

11

While some of counsel's entries are block-billed, the Court does not find that the practice was excessive or that the manner in which these billing entries were made prevents the Court from determining the appropriateness or reasonableness of counsel's claimed fee. Moreover, two of the examples of block billing cited by the Defendant, i.e., Mr. Donnahoo's September 1, 2020 and September 25, 2020 entries [Doc. 146 at 4], have been withdrawn by Plaintiff's counsel. [See Doc. 147 at 3 n.2]. For all of these reasons, the Court declines in its discretion to reduce the fee award due to the occasional use of block billing.

### 3. Tasks Performed by Multiple Timekeepers

Next, the Defendant challenges the billing entries made with respect to services performed by more than one attorney. As the First Circuit has stated: "As a general matter, the time for two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted . . . . A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992) (internal citations and quotation marks omitted). Therefore, "a court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." Guillemard-Ginorio v. Contreras, 603 F. Supp. 2d 301, 318 (D.P.R. 2009) (citation omitted).

12

First, the Defendant cites to a two-hour meeting on May 15, 2020, between Mr. Elston, Mr. Donnahoo, and Major Munday, a retired North Carolina state trooper whom the Plaintiffs had retained and designated as an expert witness. The Defendant contends that any counsel fees related to Major Munday should be reduced or eliminated because Major Munday "was patently unqualified to be an expert in this case, and they never called him for trial." [Doc. 146 at 5-6]. Regardless of whether the Plaintiffs ultimately called Major Munday as a trial witness, the fact remains that he was their designated expert. The Court does not find two attorneys meeting with an expert witness for two hours to be unreasonable, and the Court declines to reduce counsel's requested fee on this basis.

Next, the Defendant objects to the Plaintiff's attorneys claiming fees for intra-attorney conferences and communications. [Doc. 146 at 6]. Having reviewed the attorneys' billing records, the Court does not find the time spent by the Plaintiffs' attorneys in conference among themselves to be excessive and therefore will not reduce the requested fee award on this basis.

The Defendant also objects to the Plaintiff seeking fees for all three of his attorneys attending trial, and he requests that the Court reduce all fees for trial attendance by 33%. [Doc. 146 at 6-7, 8]. However, the Plaintiffs

have already reduced their billing entries to account for any unnecessary duplication. For example, Mr. Donnahoo reduced his bill by 45 hours "on some activities where [he] felt it important to be present but not necessary to bill [his] time…" [Doc. 144-3 at 6 ¶ 17]. Mr. Donnahoo's timesheet clearly shows that he either did not bill or that he reduced his bill for various activities where the lead activity was undertaken by another attorney on the team. Mr. Donnahoo did not bill for participating in the Initial Attorney's Conference [id. at 40 (12/20/19)] or in the depositions of Plaintiff Hyatt [Id. at 32 (6/16/20)]; Defendant May [id. at 29 (7/6/2020)]; Defendant Lambert [id. at 27 (7/15/20)]; and Defendant Miller [id. at 26 (7/21/20)]. Furthermore, Mr. Donnahoo carefully edited his time spent at the trial: of the thirty-four and one half (34.5) hours listed on his timesheet for time spent at the trial, Mr. Donnahoo did not bill eighteen hours at all and significantly reduced his time accordingly given his more limited role than that of Mr. Elston and Mr. Sutton. [Id. at 11-13].

Mr. Elston reduced his bill by 21.25 hours. [Doc. 144-4 at 5 ¶ 16]. Mr. Elston did not bill for the following activities: the deposition of Defendant Stockton [id. at 13 (7/17/20)]; the mediation [id. at 12 (9/23/20)]; and reviewing some draft documents [id. at 11 (2/20/21)]. Mr. Elston was the lead trial attorney, and he appropriately billed his time for the trial.

14

Mr. Sutton reduced his bill by fifteen and one-half (15.5) hours. [Doc. 144-2 at 11]. Mr. Sutton did not bill for the depositions of Major Munday [Id. (7/30/20)] and Defendant Miller [Id. (7/21/20)]. Like Mr. Elston, Mr. Sutton played a significant role at the trial, and he appropriately billed his time for the trial.

Counsel's timesheets reflect that counsel made a concerted effort to avoid the duplication of effort and adjusted their billing entries accordingly. As such, the Court concludes that it is unnecessary to further reduce billing entries related to this issue.

### 4. Fees related to Third Amended Complaint

The Defendant further argues that the Plaintiff should not recover any fees related to the preparation of and litigation related to the Plaintiffs' Third Amended Complaint. [Doc. 146 at 8]. Plaintiff Hyatt's counsel concedes that these fees should not be recovered. Counsel concedes that their fee award should be reduced by $5,400 (representing 18 hours of time expended). [Doc. 147 at 9]. Accordingly, counsel's claimed hours will be reduced by 18 hours.

The Defendant further contends that Plaintiff's fee award should be reduced by $6,682.50, the amount of fees *incurred by the Defendants* in litigating the motion to strike the Plaintiffs' Third Amended Complaint. [Doc.

15

146 at 8]. The Defendants previously requested an award of fees and costs related to their motion to strike, and the Magistrate Judge denied that request on September 25, 2020. [Doc. 64 at 7]. The Defendant did not appeal the Magistrate Judge's decision at the time, and the Court declines to revisit this issue now. The Defendant's request for a reduction of fees in the amount of $6,682.50 is denied.

### 5. Paralegal Fees

As noted above, paralegal Laurie Mathis recorded a total of 28.1 hours in work expended on the prosecution of this action. Upon careful review of the billing records, the Court finds that Ms. Mathis's hours are reasonable and should be awarded in full.

### B. Novelty and Difficulty of the Questions Raised

As for the novelty and difficulty of the questions raised, the Court notes that this case presented unusual and complex issues that are not present in the typical, run-of-the-mill law enforcement traffic stop. To the contrary, this case was extremely fact intensive and dealt with a number of unusual and/or complex issues, including: the reliance on a confidential informant and an anonymous tip; the use of Plaintiff Hyatt's and Brandon Pickens' criminal backgrounds in applying for the search warrant; issues pertaining to the canine sniff of Mr. Pickens' vehicle; the lack of Defendant Deputies' body

camera footage; the fabrication of evidence, including in the search warrant application; a pre-arrest strip search in a gas station bathroom; the display of a weapon during that strip search; and the assertion of qualified immunity and public official immunity with respect to all of the Plaintiff's claims. The litigation involved a hotly disputed motion for summary judgment, a jury trial that lasted over seven (7) days, deliberations that spanned over several days, a hung jury, and a partial jury verdict. The novelty and difficulty of the issues in this case weigh in favor of a substantial fee.

### C.    Skill Required to Properly Perform the Legal Services

This case required a considerable degree of skill and familiarity with civil rights law and practice. As already noted, there were multiple, significant factual and legal issues involved, and the Defendants vigorously defended each and every issue at each stage in litigation. This factor, therefore, weighs in favor of a substantial fee.

### D.    Opportunity Costs of Litigation

Under the relevant factors, an "attorneys' opportunity costs include the higher rates they would have otherwise charged in other cases and projects." Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC, 747 F. Supp. 2d 568, 596 (W.D.N.C. 2010). Here, Plaintiff Hyatt's counsel spent a significant amount of time working on his case—especially during the weeks leading up

17

to trial and attending and participating in a seven (7) day trial.  [Doc. 142-3: Donnahoo Decl. at ¶ 18; Doc. 142-4: Elston Decl. at ¶ 17; Doc. 142-2: Sutton Decl. at ¶ 27].  Each of Plaintiff Hyatt's attorneys are local and have firms consisting only of themselves; they do not have any associates or multiple staff members to assist them in managing their case load while they were devoted to Plaintiff Hyatt's case.  The time spent on the Plaintiff's case came at the expense of other existing clients, as well as prospective clients looking to retain counsel.  Therefore, this factor weighs in favor of a substantial fee.

### E.  Customary Fee for Similar Work

As the Fourth Circuit has recognized:

> Determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

Robinson v. Equifax Info. Svcs., LLC, 560 F.3d 235, 244 (4th Cir. 2009) (citing Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)).  In addition to

consideration of specific evidence regarding the prevailing market rate, the Court may rely upon its own knowledge and experience of the relevant market in determining a reasonable rate. See Rum Creek Coal, 31 F.3d at 175 ("The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits.").

Here, Mr. Donnahoo, Mr. Elston, and Mr. Sutton seek to be awarded fees based on the hourly rate of $300.00. Ms. Mathis seeks an hourly rate of $90.00 for the work she performed as a paralegal.

In support of their request, Plaintiff's counsel have submitted an affidavit from attorney Frank Goldsmith, who is experienced in litigating complex cases in western North Carolina. Mr. Goldsmith opines that the hourly rates of the Plaintiff's attorneys are consistent with those in the community for similar services offered by lawyers with comparable skills. [Doc. 144-5: Goldsmith Decl.]. Based on the Court's own experience and familiarity with the hourly rates charged in western North Carolina, the Court finds that a rate of $300.00 per hour for the work performed by these attorneys is reasonable and in keeping with the prevailing rates in this particular market. The Court further finds Ms. Mathis's claimed hourly rate of $90.00 to be reasonable and in keeping with the prevailing rates for paralegals in this area. Accordingly, Plaintiff's attorneys' hours will be

calculated at the rate of $300.00 per hour, while Ms. Mathis's hours will be calculated at the rate of $90.00 per hour.

## F. Attorneys' Expectation at Outset of Litigation

At the outset of litigation, the Plaintiffs' attorneys agreed to take this case on a contingency fee basis and to advance litigation expenses, despite their awareness of the distinct possibility that the Plaintiffs would not recover anything from the Defendants and therefore the attorneys would recover nothing.  However, now the Plaintiff seeks recovery of fees under 42 U.S.C. § 1988, which does not limit an award of attorneys' fees in a prevailing party in a § 1983 case to a proportion of the damages awarded.  See City of Riverside v. Rivera, 477 U.S. 561, 577 (1986) ("[T]he contingent fee arrangements that make legal services available to many victims of personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial expenditures of time and effort but produce only small monetary recoveries.").  Accordingly, the attorneys' expectations at the outset of this litigation weigh neither in favor of nor against awarding the full of amount of fees incurred.

### G. Time Limitations

Aside from otherwise expected deadlines of litigation, there were no unusual time limitations imposed by Plaintiff Hyatt or this litigation that would merit any impact in either way on the requested award. Therefore, this factor weighs neither in favor of nor against the requested award.

### H. Experience, Reputation, and Ability of Counsel

All of the attorneys involved in this matter are experienced lawyers with excellent reputations in the legal community. As such, the Court concludes that the requested hourly rate of $300.00 for the work performed by these attorneys is a reasonable rate.

### I. Undesirability of the Case in the Legal Community

Complex § 1983 actions are admittedly difficult to litigate. The complexity of this action was compounded by the fact that there was no body cam footage of several key issues, meaning that, for many of the important issues, the case would boil down to Plaintiff Hyatt's word against the word of three sworn law-enforcement officers. Additionally, even if Plaintiff Hyatt's version of the events were to be accepted, law enforcement officers are entitled to considerable immunity protections, which could have precluded recovery altogether. Finally, even if the Plaintiff were to overcome these immunity protections, the potential for any significant financial recovery was

slight. In light of these issues, the Court concludes that this case was generally undesirable in the legal community, a factor which weighs in favor of the fully requested fee.

**J.    Relationship between the Attorneys and Clients**

Aside from the customary relationship between Plaintiff Hyatt and his legal counsel, there is not a unique situation or relationship in this case that weighs in favor of or against the requested fee award.

**K.    Fee Awards in Similar Cases**

The Plaintiffs cite two civil rights cases in which the plaintiff was a similar damages award and the court subsequently awarded attorneys' fees in excess of the damages award. [See Doc. 144-1 at 14-15 (citing Crawford v. City of New London, No. 3:11-cv-1371, 2015 WL 1125491, at **1, 10 (D. Conn. Mar. 12, 2015) (awarding $197,403.75 in attorneys' fees; plaintiff previously awarded $50,000 in damages); Mglej v. Gardner, No. 2:13-cv-00713-CW, 2022 WL 2065588, at **1, 6 (D. Utah June 8, 2022) (awarding $314,077.00 in attorneys' fees; plaintiff previously awarded $60,720.00 in damages)]. The cases cited by the Plaintiff weigh in favor of awarding the requested fee award.

**L. Amount Involved and Results Obtained**

As noted by the Supreme Court, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained . . . .'" <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992) (quoting <u>Hensley</u>, 461 U.S. at 436).

Here, Plaintiff Hyatt prevailed on both his Section 1983 constitutional claims and his state law tort claims against Defendant May. The Plaintiff, however, did not succeed on any of his constitutional or state law tort claims against Defendants Lambert and Lewis, or any of the other officers who were initially named in this action. Additionally, the Plaintiff was not successful in his bid to impose liability on the Sheriff of Buncombe County or the surety company which issued the Sheriff's bond. Finally, it must be noted that the ultimate award of $50,000 is far less than the $350,000 that Plaintiff's counsel argued for in closing arguments to the jury. For these reasons, the Court concludes that the results obtained by Plaintiff Hyatt weigh in favor of reducing the requested fee by 25%.

Additionally, while Plaintiff Hyatt prevailed on at least some of his claims, Plaintiff Barrett did not. Both Plaintiffs were represented by the same attorneys in this matter, and counsel's billing records include some billing entries that appear to be related only to Plaintiff Barrett. The Defendant

23

argues that 5.0 hours should be deducted from counsel's time in order to account for Plaintiff Barrett's unsuccessful claims. [Doc. 146 at 7-8]. The Court finds that this would be a reasonable deduction, and therefore, 5.0 hours will be deducted from counsel's overall time.

In total, the Plaintiff's attorneys claimed 864.05 hours, to be compensated at the rate of $300.00 per hour. While the Court concludes that the hourly rate requested is reasonable, the total number of hours should be reduced by a total of 63 hours to 801.05 hours, in order to account for Mr. Sutton's vague billing, the time spent exclusively with respect to Plaintiff Barrett's case, the time spent related to the filing and litigation of the Plaintiffs' Third Amended Complaint. Further, to account for the limited success achieved by Plaintiff Hyatt, the Court that an overall reduction in the hours expended by 25% is appropriate. That would result in a total of 600.8 hours. Multiplying those reduced hours by the reasonable hourly rate determined by the Court results in a lodestar amount of $180,240.00 with respect to the work performed by Plaintiff's attorneys. Additionally, with respect to the work performed by Ms. Mathis, counsel will be compensated for Ms. Mathis' time for 28.1 hours at a rate of $90.00 ($2,529.00), resulting in a total fee award of $182,769.00. For the reasons stated herein, the Court

finds and concludes that this lodestar amount constitutes a reasonable attorneys' fee in this matter.

## O R D E R

**IT IS, THEREFORE, ORDERED** that Plaintiff Hyatt's Application to Award Attorneys' Fees [Doc. 144] is **GRANTED**, and Plaintiff Hyatt is hereby awarded $182,769.00 in attorneys' fees pursuant to 42 U.S.C. § 1988.

**IT IS SO ORDERED.**

Signed: March 29, 2023

Martin Reidinger
Chief United States District Judge

25